IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THOMAS LEVON MITCHELL, | ) | C/A No. 4:03-1584-27BH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF FLORENCE; JAMES C. GREGG, | ) | REPORT AND RECOMMENDATION |
| INDIVIDUALLY; OFFICER LEE R. DAVIS, | ) | |
| INDIVIDUALLY; OFFICER JOHN CALHOUN, | ) | |
| INDIVIDUALLY; OFFICER L. JORDAN, | ) | |
| INDIVIDUALLY; AND OFFICER LOCKHART, | ) | |
| INDIVIDUALLY; IN THEIR INDIVIDUAL AND | ) | |
| OFFICAL CAPACITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Thomas Levon Mitchell, filed this action under 42 U.S.C. § 1983[1] on May 8,

2003, alleging that his civil rights were violated when he was arrested on June 25, 2001. Plaintiff

was allowed to file an amended complaint on December 18, 2003. (document # 47).  On March 8,

2004, defendants Florence County and James C. Gregg Jr., filed a motion for summary judgment for

dismissal of the complaint along with supporting memorandum pursuant to Rule 56 of the Federal

Rules of Civil Procedure. (Document #63, 64).  Because the plaintiff is proceeding pro se, he was

advised on or about March 10, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir.

1975), that a failure to respond to the defendants' motion for summary judgment with additional

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Court.

evidence or counter affidavits could result in dismissal of his complaint.  The plaintiff filed a response on April 15, 2004. (Document # 76). On April 19, 2004, defendants filed a reply to the response. (Document # 77). On April 27, 2004, plaintiff filed a reply to the response reply. (Document #78).

Defendants City of Florence, Officer Davis, Officer Calhoun, Officer Lochart, and Officer Jordan ( defendants) filed a motion for summary judgment on April 5, 2004. Because the plaintiff is proceeding pro se, he was advised on or about April 13, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response on May 14, 2004. (Document # 79).  Defendants filed a reply to the response on May 20, 2004. (Document # 80). Plaintiff filed a reply to the response reply on June 4, 2004. (Document #81).

## II.  DISCUSSION OF ALLEGATIONS

Plaintiff alleges in his complaint that on June 25, 2001, he was subjected to an unreasonable level of force. Plaintiff alleges that after he was handcuffed he was slammed onto a cement floor causing a gash and/or cut above his right eye which caused plaintiff to lose a considerable amount of blood, that he was severely beaten causing trauma, and that the skin on his wrists were pierced by two pairs of handcuffs. Plaintiff alleges that as a result of the severe bleeding, he was transported to Carolinas Hospital and treated. (See Amended complaint).

Plaintiff also makes allegations that he was arrested without probable cause, which arrest resulted from a policy or custom resulting in a failure to train on the part of defendants Gregg and

2

Florence County.

### III.  SUMMARY JUDGMENT

Defendants have filed motions for summary judgment. Plaintiff has filed responses in opposition.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

3

movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV. DEFENDANTS GREGG AND FLORENCE COUNTY'S MOTION FOR SUMMARY JUDGMENT

Defendants Florence County and Gregg filed a motion for summary judgment in which they argue that Florence County should be dismissed from this action as it has no control over the operation of the FCDC. Defendants assert that the Fourth Circuit Court of Appeals in Gulledge v. Smart, 691 F. Supp. 947, *aff'd* 878 F2d 379 (4th Cir. 1989), upheld the ruling that in "South Carolina a sheriff, and his deputies, are state actors." Therefore, defendants Gregg and Florence County argue that Florence County has no connection whatsoever with the policies, customs, or operation of FCDC. Further, defendants state that there is no question that the individual police officers are not under the supervision, control, or authority of Florence County.

Plaintiff argues in his response that "Florence County is the ruling authority which has control over the Sheriff and the Sheriff is responsible for the actions that takes place and/or that does not take place in his jail. Local governments like every other person under the statute may be used for constitutional deprivations visited pursuant to Governmental custom."  (Document # 76).

Local governing bodies such as counties, municipal corporations, and school boards (and

municipal officials sued in their official capacities), are "persons" that can be sued directly under §1983 for monetary, declaratory, or injunctive relief when alleged unconstitutional action executes governmental policy or custom. <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 690-91 (1978). Sheriff's Departments in South Carolina are state agencies, not municipal departments. *See* Section 23-13-550, South Carolina Code of Laws; and 1975 S.C.Att'y.Gen'l.Op. No. 47 (January 22, 1975); and Section 23-13-10 of the South Carolina Code of Laws, which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. *See also* <u>Allen v. Fidelity and Deposit Company</u>, 515 F. Supp. 1185, 1189-1191 (D.S.C. 1981), *affirmed*, 694 F.2d 716 (4th Cir. 1982) [Table].

The undersigned recommends that Florence County be dismissed as a party in this action in that plaintiff has not alleged or shown that there was a  violation of federal law that occurred pursuant to official governmental policy or custom. Plaintiff only alleges that Florence County has control and is responsible for the Sheriff's actions. However, as stated above, Sheriff's Departments in South Carolina are state agencies, not municipal departments, and any policy or custom as to training the city police officers is not established by defendant Florence County.

Further, defendants Florence County and Gregg  argue that the allegations against Sheriff Gregg should be dismissed as plaintiff has failed to allege or prove actual involvement of defendant Gregg. These defendants assert that the plaintiff alleges no individual wrongdoing against defendant Gregg except generally in paragraph 5 of the amended complaint as being responsible for the operation and management of the Florence County Sheriff's Department and ultimately responsible for the training of personnel employed at the Sheriff's Department.

5

Defendants submitted the affidavit of Sheriff Gregg who attests that he is charged with the responsibility of operating the FCDC and that the City police officers are not under his control or command. Gregg attests that at the time plaintiff alleges that he was mistreated by the City police officers, they were not under his supervision or command. Gregg states that neither he nor any individual associated with the Sheriff's Department played any part in the alleged wrongful acts. Gregg attests that neither he nor any other individual associated with his office made any determination whatsoever as to whether the arrest and ultimate detention of the plaintiff was supported by reasonable suspicion or probable cause. Gregg attests that when individuals are arrested by City police officers, the City officers are permitted to bring the detainees to FCDC for booking and detention, pending possible trial. Further, Gregg states that bond is set at the discretion of a City of Florence Municipal Judge which is not under his control or command. Gregg further attests that he is not permitted in his own discretion to decide whether a particular detainee should be released from the FCDC.

Plaintiff has not made any direct allegations against Sheriff Gregg other than the fact that he is in charge of the FCDC. Plaintiff has not shown that Sheriff Gregg had any control over any alleged acts of the City police officers or that there was any deficiency in policy or training on the part of Sheriff Gregg. Based on the above, the undersigned concludes that plaintiff has failed to allege personal involvement by Sheriff Gregg and has not shown any proof of a deficient policy, custom, or training on the part of Sheriff Gregg or Florence County that would have any relevancy to this action or amount to a constitutional violation. Therefore, it is recommended that the action against Sheriff Gregg be dismissed and defendants' motion for summary judgment granted.

Defendants also argue that Sheriff Gregg is entitled to Eleventh Amendment Immunity and

6

Qualified Immunity.

The sheriff is a state official acting in his official capacity. The case of Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) held that South Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the Eleventh Amendment. Therefore, it is recommended that defendants' motion for summary judgment be granted as to Sheriff Gregg.

Defendants further argue that even if Sheriff Gregg could be held liable in his official capacity, he would still be entitled to qualified immunity from any liability in his individual capacity.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.    As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1985).        In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of

Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits.  Without such immunity, the operations of government would be immobilized.    Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining

an official's entitlement to qualified immunity is summary judgment."  The Torchinsky court held

that an official's entitlement to qualified immunity is based upon an "objective reasonableness"

standard. "The very idea of reasonableness requires that courts accord interpretive latitude to

8

officials judgments." <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Sevigny v. Dicksey</u>, 846 F. 2d 953 (4th Cir.1988).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of <u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In <u>Maciariello v. Sumner</u>, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law.  Second, the manner in which this right applies to the actions of the official must also be apparent.  Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent.

The plaintiff in this case has not done so. Plaintiff has failed to show that Sheriff Gregg was directly involved in his arrest. It was City police officers who arrested plaintiff, it was a city judge who denied bond for plaintiff, and Sheriff Gregg has attested that he has no control or command over City police officers or City judges. Further, Sheriff Gregg has no authority to release plaintiff and plaintiff has not shown that a reasonable person in Sheriff Gregg's position would have known whether or not he was wrongfully detaining plaintiff when a judge has denied bond and when only a judicial officer or clerk of court can authorize release. Thus, the undersigned cannot conclude that defendant Sheriff Gregg in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity. [2]

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint states additional claims for relief under state common law, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

---

[2] In plaintiff's response to the motion for summary judgment, plaintiff makes allegations of medical indifference by not receiving his prescription medicine and allegations of failure to receive requested legal material while at the FCDC. Defendants argue in their reply to the response that plaintiff failed to allege these allegations in his amended complaint. Plaintiff, in his response to the reply, argues that he on page 5, paragraph 28, he is referring to the deprivation of access to legal material and deprivation of medical care. A review of the amended complaint reveals that plaintiff did not raise these allegations even liberally construing his amended complaint. In paragraph 28 of the amended complaint, plaintiff alleges "The plaintiff's Fourth and Fourteenth Amendment rights were violated resulting from defendants Florence County, COF and Gregg's failure to train its employees." (Document #47).

## V.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of Florence, Davis, Calhoun, Jordan, and Lochart ("the defendants") filed a motion for summary judgment along with supporting memorandum. (Doc. # 69 and #70). Defendants also filed affidavits along with their memorandum.

Defendants submitted the affidavit of Lee R. Davis who attests that he is employed by the City of Florence Police Department and serves as a Narcotics Investigator. Davis attests that he has been a Police Officer with the City of Florence for about six years and prior to working with the City of Florence, he was employed as a Military Police Officer for three and one half years. Davis attests that at the time of the incident alleged by plaintiff, he received information from a confidential and reliable informant regarding illicit narcotics activity within the City of Florence. Davis attests that this informant had previously provided him with accurate and reliable information. Davis attests that on or about June 1, 2001, the informant provided accurate information regarding plaintiff and his involvement in illicit drugs within the City of Florence. As a result of the information provide, Davis attests that plaintiff was found to be in possession of a quantity of crack cocaine and powder cocaine on June 1, 2001, that was packaged for resale based on affiant's training and experience. Davis attests that plaintiff was also found in possession of a substantial amount of cash and two cellular phones, all indicators that plaintiff was a street-level drug dealer. Davis attests that at the time of the June 1, 2001, arrest, plaintiff violently resisted arrest by attempting to strike and fight the police officers present. Davis attests that subsequent to the arrest, he observed a boxing license in plaintiff's personal property which corroborated information he had previously received from the informant that plaintiff was teaching Florence area children to box.

On June 25, 2001, Davis attests that he received additional information from the informant

11

that plaintiff was holding and selling crack cocaine at an area nightclub within the City of Florence. Davis attests that the informant stated that he observed plaintiff selling drugs and discussed the purchase of crack cocaine from plaintiff. Davis attests that due to plaintiff's prior assaultive behavior, his apparent skill and training, his extensive criminal history, and his location in a small nightclub, he believed that there was a potential for violence by him or a confederate. Therefore, Davis attests that he assembled two other narcotics investigators and one uniform officer to contact plaintiff with the intent of initiating a field interview and obtaining consent to search plaintiff's person. Davis attests that all of the officers were clearly identified and they traveled to the location identified by the informant and confirmed plaintiff's presence in the nightclub. Due to the nightclub being small, crowded, and with poor lighting, Davis attests that the physical confines of the establishment created a very dangerous situation in case plaintiff became combative or someone attempted to aid him if they made a decision to arrest plaintiff. Davis states that due to his concern, he asked plaintiff to step outside to talk and when he reached toward plaintiff to escort him out of the nightclub, plaintiff began flailing his arms and striking out at him and other officers. Davis attests that he and the other officers attempted to gain control of plaintiff's hands to prevent him from assaulting him and to prevent plaintiff from producing a weapon and, while doing so, they all became off-balance and toppled to the floor. Davis contends that while on the floor, plaintiff continued struggling with him and the other officers and an unknown patron utilized what he believes to have been a pool stick to strike Officer Lochart in the back. During the struggle, Davis attests that he observed plaintiff trying to place a plastic baggy into his mouth. Davis attests that he believed plaintiff was attempting to consume the narcotics in an attempt to destroy evidence. Due to plaintiff's continued resistance, his attempt to destroy evidence by consuming illicit narcotics, and

12

the potential fatal health risks posed by ingestion of the illicit drugs, plaintiff was sprayed with pepper spray. Once sprayed, Davis became compliant and began responding to verbal commands. Davis attests that a plastic baggy containing a white powder substance appearing to be, and which eventually tested positive as, cocaine was recovered from plaintiff's mouth. Davis asserts that plaintiff was escorted out of the nightclub and handcuffed using two sets of handcuffs in a daisy-chain arrangement. Davis describes this arrangement as linked one set of cuffs to another to allow a greater distance between the plaintiff's wrists thereby making the handcuffs substantially more comfortable and less restrictive. Davis contends that this arrangement was used because plaintiff was of a stocky build and complaining that his shoulder was sore. Davis attests that he observed a small amount of blood on plaintiff's face from a small cut over his eye and he was complaining about his shoulder being sore. Therefore, Davis attests that knowing the FCDC would not accept a prisoner who was complaining of an injury unless he had been cleared by a medical professional prior to booking, he had plaintiff transported to the Carolinas Hospital.  Davis attests that he and the other two narcotics officers responded to the Carolinas Hospital with plaintiff and provided security while he was being treated. Davis attests that plaintiff neither complained to him nor did he hear plaintiff complain to anyone else regarding any alleged injury to his wrists or any other part of his body other than his shoulder. Davis attests that plaintiff was treated and released at which time he was transported to the FCDC by a uniform officer.

Davis attests that as a result of plaintiff's arrest on June 1, 2001, he was charged with trafficking cocaine, possession of cocaine with intent to distribute within proximity of a school, and assault on a law enforcement officer. These charges were true billed by the Florence County Grand jury on April 11, 2002. As a result of plaintiff's June 25, 2001, arrest, he was charged with

possession of cocaine with intent to distribute, assault of a police officer while resisting arrest, and possession of a controlled substance within proximity of a school. Davis attests that the Florence County Grand Jury issued a true bill indictment for those charges on January 17, 2002. Davis attests that it is his understanding that due to plaintiff's second arrest on June 25, 2001, just 24 days after his first arrest, and his extensive criminal history, the city judge denied bond after a hearing. Davis attests that as a result of a plea agreement reached between plaintiff and the Florence County Solicitor's Office, plaintiff was allowed to plea to one count of trafficking in cocaine second offense on October 28, 2002. Davis attests that during the arrest on June 25, 2001, he never observed anyone striking plaintiff with any type of impact weapon or implement and he did not strike plaintiff with any portion of his body. Davis attests that he never used, nor observed anyone else use, any excessive or unreasonable force during plaintiff's arrest on either June 1, 2001 or June 25, 2001. Davis attests that he believed in good faith that at all times there was sufficient probable cause to arrest plaintiff for the drug offenses. (Doc. # 73, Davis affidavit).

The defendants also submitted the affidavits of Officers John E. Lochart and John M. Calhoun. Lochart attests that he was contacted on June 25, 2001, regarding information received by Davis from a reliable and confidential informant that plaintiff was in possession of cocaine at a local bar within the City of Florence and was selling the drugs. Lochart attests that he and Officer Davis, Sergeant Calhoun and Officer Jordan traveled to the bar to locate plaintiff. Lochart attests that the bar in question was very small and presented a serious safety concern. Lochart attests that as soon as Davis attempted to escort plaintiff outside the bar, plaintiff began to violently assault him, Davis, and the other officers. Lochart attests that he immediately moved to gain control of plaintiff by grappling with him and during the struggle everyone fell to the ground. During the struggle, Lochart

14

states that another patron struck him from behind with a pool cue but he continued to struggle with plaintiff in an attempt to gain control of his hands. Lochart attests that he observed plaintiff remove a clear plastic baggy containing a white substance from his pants and place it in his mouth in what he believed to be an effort to ingest the cocaine to destroy the drugs. Lochart attests that based upon his training and experience, he knew that plaintiff could be killed or seriously injured by oral ingestion of cocaine. Lochart attests that based on plaintiff's continued resistance to arrest, and his apparent intent to destroy evidence, and the concern of plaintiff's health from ingesting cocaine, he decided it was necessary to spray plaintiff with pepper spray. Lochart attests that prior to spraying plaintiff with the pepper spray, he warned him that he would be sprayed if he continued to resist but, despite the warning, plaintiff continued to fight and so he sprayed plaintiff with a short burst of pepper spray causing him to reduce his level of violence and to spit out the baggy of cocaine. Lochart states that plaintiff was immediately taken outside of the bar where he complained of discomfort to his shoulder and appeared to have a minor laceration over his eye. Due to his complaints and his stocky build, Lochart attests that an additional set of handcuffs were placed in a series of "daisy chained" to the other set to increase the separation between the wrists. Lochart attests that plaintiff was taken to Carolinas Hospital as a precautionary measure due to his only complaint of soreness in his shoulder. Lochart attests that all the officers were clearly identified as police officers from their vests and badges and he never observed anyone utilize any unnecessary or unreasonable force while attempting to restrain plaintiff. Lochart attests that he believed in good faith that at all times there was sufficient probable cause to arrest plaintiff for the drug offenses. (See Doc. # 72).

Defendants also submitted the affidavit of John M. Calhoun, Sergeant in the Narcotics Unit who attests to basically the same facts as Lochart and Davis as set out above. (See Doc. # 71).

15

The defendants first argue that plaintiff fails to state a claim for a violation of his Fourth Amendment rights where there is no demonstration of unreasonable force in the arrest of plaintiff.

As the allegations plaintiff has raised in connection with his arrest in his complaint pertain to the time period before he was arrested and before he was a pretrial detainee, his claims are evaluated pursuant to the Fourth Amendment. Protection against force during arrest is provided by the Fourth Amendment, Graham v. Connor, 490 U.S. 386 (1989). All claims of use of excessive force during investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governments interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to circumstances of particular case, including severity of the crime, whether the suspect poses immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396, Foote v. Dunagan, 33 F.3d 445 (4th Cir. 1994). The focus is on reasonableness at the moment, recognizing that officers are often faced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

The court may also consider the extent of plaintiff's injuries, or lack of them, in weighing his claim of excessive force. In a recent case from the prison milieu, the United States Supreme Court indicated that the amount of injury is irrelevant, if the inmate can show that it was inflicted with a

malicious intent to harm.  Hudson v. McMillian, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992).[3]  Although that standard is used in consideration of Eighth Amendment claims of cruel and unusual punishment, the same thought must be applied in cases questioning the "objective reasonableness" of force used to effect an arrest.

The affidavits submitted by the defendants are consistent in regards to the alleged use of force.  As to the facts, it is clear that the plaintiff became violent and began struggling with the law enforcement officers when they attempted to escort him out of the club in an effort to talk with him.  It is certainly reasonable to conclude from the facts that a reasonable person would have believed that plaintiff was dangerous and could have possibly attempted to retrieve a weapon based on his prior history and behavior. Also, from the facts, it is reasonable to conclude that plaintiff was not only putting the officers at danger with his struggle and resisting arrest but was believed to be putting his own life at danger by attempting to swallow the cocaine to destroy evidence. The facts indicate that officer Lochart was reasonable in spraying a burst of pepper spray at plaintiff to get him to cooperate. The affidavits state that plaintiff was warned that he would be sprayed if he continued to struggle but he failed to stop.  It is clear that the plaintiff's actions put the police officers in immediate danger, as well as others, due to his violent behavior.

In the Fourth Circuit case of Drewitt v. Pratt, 999 F.2d 774 (4th Cir. 1993), the Fourth Circuit Court of Appeals found the officer in that case "acted reasonably as viewed from the officer's perspective of the situation.  The officer was forced to make a quick decision when faced with an oncoming car and acted reasonably in shooting at the suspect in order to prevent serious injury to

---

[3] A plaintiff may not recover, however, for only de minimis injuries.  Hudson, 117 L.Ed.2d, at 168.

himself or the other officers."  Summary judgment was deemed appropriate in the <u>Drewitt</u> case and is likewise appropriate in the plaintiff's case.

It is clear from plaintiff's pleadings and defendants' affidavits that plaintiff was struggling with the officers. Clearly, the situation was tense.  Additionally, plaintiff refused to follow the directives of law enforcement and resisted attempts to arrest him.  All of the affidavits submitted indicate that while attempting to handcuff plaintiff, they all lost their balance and fell to the floor which plaintiff alleges that he hit the cement floor causing injury to his person. The police officers in this case would be allowed to use reasonable force consistent with what is necessary to have taken the plaintiff into custody.  The facts as set forth indicate the force applied to take the plaintiff into custody was reasonable. The plaintiff has simply failed to put forth evidence to show there was a malicious intent by law enforcement to harm him while he is being taken into custody.  Again, the situation was tense based on the conduct of the plaintiff.  Law Enforcement is allowed to use reasonable force to take the plaintiff into custody.  Further, officer Lochart did what he thought was necessary at the time. Plaintiff admits that he was taken to the hospital for treatment from the scene of the incident and did not provide any medical records to reveal any significant, life threatening, or permanent injuries.

In summary, plaintiff's claims of unnecessary and excessive force are simply not supported by the evidence of record.  He has failed to show that the actions of any of the officers were improperly motivated, therefore, he has failed to show that the reasonable degree of force used against him was unconstitutional.  There is simply no <u>genuine</u> issue as to the facts in this case.  It is, therefore, recommended that summary judgment is appropriate on the issue of excessive force due to the lack of evidence supporting the objective element of this claim. Even assuming, *arguendo*,

there was excessive force used during the arrest, a plaintiff may not recover, however, for only <u>de minimis</u> injuries.  <u>Hudson</u>, 117 L.Ed.2d, at 168.

Further, plaintiff's Eighth Amendment and Fourteenth Amendment claims must fail as all of the allegations plaintiff has raised in his complaint pertain to the time period before he was arrested and before he was a pretrial detainee. Therefore, as discussed above, we evaluate his complaint pursuant to the Fourth Amendment.

Additionally, the Fourth Amendment right to be arrested only on probable cause is clearly established. <u>Smith v. Reddy</u>, 101 F.3d 351, 356 (4th Cir. 1996); <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 182 (4th Cir. 1996) (allegations that an arrest made pursuant to a warrant was not supported by probable cause states Fourth Amendment claim analogous to malicious prosecution). Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime. <u>Porterfield v. Lott</u>, 156 F.3d 563, 569 (4th Cir. 1998). Allegations that arrest violates state law does not state claim unless there was no probable cause for arrest. <u>Fisher v. Washington Metro. Area Transit Auth.</u>, 690 F.2d 1133, 1139 (4th Cir. 1982). When probable cause to arrest existed even in the absence of county official's alleged misrepresentation in arrest warrant, no violation of constitutional rights occurred. <u>Wilkes v. Young</u>, 28 F.3d 1362, 1365 (4th Cir. 1994).

Based on the record, the undersigned finds that there was sufficient evidence for the officers to find probable cause to investigate the information they had obtained on June 25, 2001, from the reliable confidential informant. Officers had relied on information given previously that plaintiff was actively selling narcotics by the same informant which led to the arrest of plaintiff on June 1, 2001. Further, the officers had attempted to minimize any problems in such a small nightclub by asking

plaintiff to step outside to discuss the situation with them. Plaintiff then attacked the officers before they had an opportunity to investigate the allegations and discuss the matter with the plaintiff. The officers clearly had probable cause to arrest the plaintiff once he began to violently assault them. Further, the Florence County Grand jury entered a true bill on the indictments. The warrants from the arrest on June 25, 2001, were dismissed merely as a result of a plea agreement between the Florence County Solicitor and plaintiff's defense counsel.  Therefore, the undersigned recommends that defendants' motion for summary judgment with respect to these issues be granted.

Next, defendants argue in their memorandum in support of summary judgment that plaintiff can offer no evidence of a failure on the part of the City of Florence to train its employees where these defendants were trained in compliance with the statutes of the State of South Carolina.

A claim of inadequate training under 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised. Temkin v. Frederick County Comm., 945 F. 2d 716, 724 (4th Cir. 1991).

The undersigned concludes that plaintiff has failed to meet his burden with regard to the issue of failure to properly train its officers. The officers received training at the South Carolina Criminal Justice Academy and plaintiff has failed to demonstrate a constitutional deprivation by these defendants. (See affidavits of Lochart, Davis, and Calhoun). Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the

20

plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). As this theory does not apply to §1983 cases and plaintiff has not shown that defendant City of Florence promulgated any policy that caused a constitutional deprivation, the undersigned recommends that summary judgment be granted to Defendant City of Florence on this basis.

Next, defendants argue that plaintiff's claims of constitutional deprivation fail as a matter of law where the record clearly demonstrates any alleged injury is *de minimis* and fails to rise to the level of cognizable constitutional claim.

In his amended complaint, plaintiff argues that the officers "joined together in tossing plaintiff to the floor causing his head to hit the concrete which resulted in injury in the form of a rather large gash and/or cut above his right eye causing plaintiff to lose a considerable amount of blood." (Document #47). Plaintiff alleges that he was then "beaten" and Officer Lochart sprayed him with mace. Plaintiff alleges that as defendant Lochart sprayed him with mace, the other officers applied two sets of handcuffs to his wrists, piercing his skin and cutting off blood circulation. (Amended complaint, document #47).

Viewing the facts in the light most favorable to the plaintiff, his injuries were de minimis. If a prisoner's injury is de minimis, then the prisoner's excessive force claim fails as a matter of law. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994). Plaintiff's injuries do not warrant a finding of a constitutional violation and recovery of damages. Plaintiff did not allege any medical problems or permanent injury as a result of the pepper spray. Further, plaintiff only alleged he received a cut above his eye, a bruised right shoulder, cuts on his wrists and shins. The defendants transported plaintiff to the hospital because of his complaints of shoulder pain and a gash over his eye brow and the fact that the FCDC will not take someone in complaining of an injury unless cleared by a medical

21

professional. A review of the medical records (which are difficult to read) reveal that plaintiff was treated for shoulder complaints and a 2 cm wound to the right eyebrow. There is no evidence of permanent or serious injury. Therefore, the undersigned recommends that defendants' motion for summary judgment be granted on this ground.

Defendants argue that the individual defendants are entitled to qualified immunity for plaintiff's claim where the record clearly demonstrates that there has been no cognizable constitutional deprivation of which a reasonable officer should have known.

Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.  ( See pages 8-10 of this report and recommendation for a complete discussion of the law as to qualified immunity).

In this case, the plaintiff has failed to allege any claim against any of officers that would constitute action outside the scope and course of their employment. The defendants received a tip from a confidential and reliable confidential informant who had previously provided reliable information about plaintiff's drug distribution which led to his arrest on June 1, 2001. Defendants responded to the location identified by the informant and in the process of attempting to verify the information, plaintiff began combative behavior and struggling with the officers. When plaintiff continued to assault the officers and attempted to ingest cocaine and destroy the evidence, he was sprayed with pepper spray. Therefore, defendants acted reasonably in trying to protect themselves, the plaintiff and others. As stated above, the undersigned finds that the officers did not act with unnecessary or excessive force. Accordingly, the undersigned recommends that the defendants' motion for summary judgment be granted on the issue of qualified immunity.

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint states additional claims for relief under state common law, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## VI. CONCLUSION

Based on the reasons set out above, plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore,

**RECOMMENDED** that the motions filed by the defendants for summary judgment

(document #63 and #69 ) be **GRANTED IN THEIR ENTIRETY** and that this matter be

**DISMISSED.**

Respectfully submitted,

s/Thomas R. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 1,  2005
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

24