UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Levon Mitchell, | ) | C/A No. 4:03-1584-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Florence County; City of Florence; James C. Gregg, Individually; Officer Lee R. Davis, Individually; Officer John Calhoun, Individually; Officer L. Jordan, Individually; and Officer Lochart, Individually; in Their Individual and Official Capacities, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Thomas Levon Mitchell is an inmate of the South Carolina Department of Corrections currently incarcerated at Turbeville Correctional Institution. Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was arrested on June 25, 2001. Plaintiff was allowed to amend his complaint on December 18, 2003.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for pretrial handling. On March 8, 2004, defendants Florence County and James C. Gregg, Jr., filed a motion for summary judgment. By order filed March 10, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to the motion for summary judgment on April 15, 2004. On April 19, 2004, defendants filed a reply to the plaintiff's response. Plaintiff filed a reply

to the defendants' reply on April 27, 2004.

On April 5, 2004, defendants City of Florence, Officer Davis, Officer Calhoun, Officer Lochart, and Officer Jordan ("defendants") filed a motion for summary judgment. By order filed April 13, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), plaintiff was again advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to the motion for summary judgment on May 14, 2004. On May 20, 2004, defendants filed a reply to the plaintiff's response. Plaintiff filed a reply to the defendants' reply on June 4, 2004.

On March 1, 2005, United States Magistrate Thomas E. Rogers, III issued a Report and Recommendation (the "Report") analyzing the issues and recommending that the District Court grant both motions for summary judgment. The plaintiff filed objections to the Report on March 17, 2005.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1). The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id*.

**Facts**

The Court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report. The Court therefore adopts the Magistrate Judge's version of the facts in this

case to the extent such facts are not specifically included herein.

Plaintiff alleges that on June 25, 2001, he was subjected to an unreasonable level of force during arrest and that, as a result, he was transported to Carolinas Hospital for treatment. He also alleges that he was arrested without probable cause and that the arrest resulted from a policy or custom of a failure to train on the part of defendants Gregg and Florence County.

## Summary Judgment Standard

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary Judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rules 56(c), FRCP; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive

evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## Defendants Gregg and Florence County's Motion for Summary Judgment

Plaintiff asserts in his objections that defendants Gregg and Florence County should not be dismissed, as recommended by the Magistrate Judge. He bases this assertion on the case of *Knight v. Carlson*, 478 F. Supp. 55 (D. Cal. 1979), which held that a county was not a subdivision of the state for Eleventh Amendment purposes, and thus it was not immune from action brought pursuant to civil rights statute.

In South Carolina, Sheriff's Departments are state agencies, not municipal departments. *See* S.C. Code Ann. §23-13-550; 1975 S.C. Att'y. Gen'l. Op. No. 47 (January 22, 1975). The Sheriff's authority is limited, he has the authority to hire or terminate employees of the Sheriff's Department and is responsible for neglect of duty or misconduct by a deputy sheriff. S.C. Code Ann. § 23-13-10; *see also Allen v. Fidelity & Deposit Co.*, 515 F. Supp. 1185, 1189-1191 (D.S.C. 1981), *affirmed*, 694 F.2d 716 (4th Cir. 1982) [Table]. The plaintiff asserts only that Florence County has control and is responsible for the Sheriff's actions. However, since the law of South Carolina defines Sheriffs Departments as state agencies rather than municipal departments, Florence County cannot be held responsible for any actions attributable to Sheriff Greg.

Additionally, plaintiff asserts "tortious conduct of employees pursuant to custom or usage of the county" that, he alleges, makes it responsible for such "governmental custom." Plaintiff's objections state:

> Florence County through the Sheriff could have instituted several procedures to detect inmates who were not afforded a preliminary hearing within ten (10) days of requested, which is required by South Carolina Rules of Criminal Procedure, Rule 2(B)

4

>preliminary hearing on pages 249-250 South Carolina Rules of Court 2005 Edition. Also plaintiff was not indicted by a grand jury until seven (7) months after his arrest.

(Objections p. 4)

Defendants Florence County and Gregg argue that Sheriff Gregg should be dismissed as a party because the plaintiff alleges no individual wrongdoing against him. The allegations as to defendant Gregg are found in paragraph five (5) of the amended complaint:

>Defendant James C. Gregg Jr. an agent of Defendant Florence County is the Sheriff of the Defendant Florence County. He is believed to be responsible for the operation and management of the Florence County Sheriff's Department (FCSD); and the Florence County Detention Center (FCDC) where plaintiff was held in violation of the Federal Constitution for a period exceeding five (5) months. He is ultimately believed to be responsible for the training of employees and personnel employed at FCDS and FCDC. He is sued in his individual and official capacities.

In his affidavit Sheriff Gregg attests that he is charged with the responsibility of operating the FCDC and the City police officers are not under his control or command. He further attests

>[T]he four city police officers named as defendants were not under my supervision or command and were, instead, employees of the City of Florence. Neither I nor any other official or individual associated with the Florence County Sheriff's Department played any part whatsoever in any of these alleged wrongful or unlawful acts. Neither I nor any official or individual associated with the Florence County Sheriff's Department made any determinations whatsoever as to whether the arrest and ultimate detention of the plaintiff was supported by reasonable suspicion or cause.
>******
>Individuals who are placed under arrest by the City of Florence Police Department are permitted to bring arrestees/detainees to Florence County Detention Center for booking and detention, pending possible trial. In that regard, neither I nor any other individual or official associated with the Florence County Sheriff's Department or the Florence County Detention Center make any determination whatsoever as to whether or not an arrest effected by a City of Florence police officer is based upon probable cause. Bonds for such individuals are set at the discretion of a Florence Municipal Judge, and no such Judge is under my supervision and control as Sheriff of Florence County.

Affidavit of James C. Gregg, Jr., pp. 2-3. Plaintiff has failed to allege personal involvement by Sheriff

5

Gregg and has not shown any proof of a deficient policy, custom, or training on the part of Sheriff Gregg or Florence County that would have any relevancy to this action or amount to a constitutional violation.

Plaintiff objects to the Magistrate Judge's finding that the defendant Sheriff Gregg is entitled to qualified immunity. Defendant argues that he has in no way knowingly violated any of the plaintiff's constitutional rights and is entitled to qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Defendant argues that plaintiff has failed to show that Sheriff Gregg was directly involved in his arrest.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. *Gomez v. Toldeo*, 446 U.S. 635, 640-41 (1980); *Tanner v. Hardy*, 764 F.2d 1024, 1027 (4th Cir. 1985). Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. *Harlow*, 457 U.S. at 807. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. *Siegert v. Gilley*, 500 U.S. 226, 331 (1991). For that reason, the issue of immunity should be addressed before discovery is allowed. *Id*.

The Supreme Court in *Harlow* established the standard which the court is to follow in determining whether defendant is protected by this immunity: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have know." *Harlow*, 457 U.S. at 818. As discussed above, the plaintiff has not established that Sheriff Gregg was directly involved in his arrest or responsible for the city police officers that made the arrest.[1] Thus, summary judgment is granted on this issue.

### Defendants City of Florence, Davis, Calhoun, Jordan, and Lockart's Motion for Summary Judgment

Plaintiff asserts in his objections that defendants City of Florence, Davis, Calhoun, Jordan, and Lockart should not be dismissed, as recommended by the Magistrate Judge. Plaintiff's objection is based on the allegation that he was arrested without probable cause and that he had a right to resist arrest:

> In U.S. v. Moore, 817 F.2d 1105, 1106, states that an officer is not entitled to seize and search every person on the street; mere knowledge of the suspect being a known narcotics dealer who put his or her hand into a pocket as the police approached does not provide justification. Not only may an individual not be deprived of a federally protected right by an unlawful arrest and detention, but he has an undoubted right to resist an unlawful arrest, Basista v. Weir, C.A. 3 (PA.) 1965, 340 F.2d 74. Accused who asserted that his arrest was unlawful, that he had right to resist such arrest and that doing so was that he was badly beaten by police had claim to federal right under § 1983, MacDonald v. Musick, C.A. 9 (Cal.) 1970, 425 C.2d 373.

Objections pp. 6-7. Additionally, plaintiff alleges that the City judge improperly "denied bond for the plaintiff because he talked to the city judge." (Objections p. 8)

**Probable Cause**

Plaintiff's allegations all took place prior to his arrest and before he was a pretrial detainee. Consequently, his Eighth and Fourteenth Amendment claims must fail and his complaint should be

---

[1] Plaintiff, in his response to the motion for summary judgment and his objections, makes allegations of medical indifference that he did not receive his prescription medicine and allegations of failure to receive requested legal material while at FCDC. Even giving the document liberal construction, plaintiff failed to allege these allegations in his amended complaint. The amended complaint alleges in paragraph 28: "The plaintiff's Fourth and Fourteenth Amendment rights were violated resulting from defendants Florence County, [City Of Florence] and Gregg's failure to train its employees."

7

evaluated pursuant to the Fourth Amendment. The Fourth Amendment establishes the right to be arrested only on probable cause that is clearly established. *Smith . Reddy*, 101 F.3d 351, 356 (4th Cir. 1996). Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime. *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998).

Warrantless arrests, and searches incident thereto, are permitted where there is probable cause to believe a felony is being or has been committed by the arrested individual, based upon "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). *Accord U.S. v. Watson*, 423 U.S. 411 (1976) (warrantless arrest permitted if officer has probable cause to believe felony has been committed, even if committed outside officer's presence); *U.S. v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004); *U.S. v. Humphries*, 372 F.3d 653, 657 (4th Cir. 1994); *U.S. v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990).

As the Supreme Court put it in *Illinois v. Gates*, 462 U.S. at 232, "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." The Fourth Circuit has explained the probable cause standard as "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *U.S. v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984).

Whether there is probable cause to arrest depends on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 369-371 (2003). In assessing the totality of the circumstances, the potentially relevant factors are numerous and widely vary, including:

an officer's practical experience and the inferences the officer may draw from that

8

> experience; or the context of a high crime area; or an individual's presence in a high crime area coupled with his "headlong flight" upon noticing police; or evasive conduct that falls short of headlong flight; or even "seemingly innocent activity" when placed in context of surrounding circumstances.

*Id.* (internal citations omitted).

> Because probable cause is an objective test, we examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether *they* thought that the facts constituted probable cause.

*U.S. v. Gray*, 137 F.3d 765, 770 (4th Cir. 1998).

Officer Davis attests that on or about June 1, 2001, he relied on a confidential informant that provided accurate information regarding plaintiff and his involvement in illicit drugs within the City of Florence. As a result of the information provided, Davis attests that plaintiff was found to be in possession of crack and powder cocaine on June 1, 2001, that, based on his experience, he deemed was packaged for resale. The plaintiff also had on him a substantial amount of cash and two cellular phones, indicators to Davis that plaintiff was a street-level drug dealer. Davis attests that at the time of the June 1, 2001, arrest, plaintiff violently resisted arrest by attempting to strike and fight the police officers present. Davis attest that he subsequently observed a boxing license in plaintiff's personal property which corroborated information he had received from the informant that plaintiff was teaching Florence area children how to box.

Davis attests that on June 25, 2001, he received information from the same informant that plaintiff was holding and selling crack cocaine at an area nightclub. The informant told Davis that he observed plaintiff selling drugs and discussed the purchase of drugs with the plaintiff. Davis attests that, due to plaintiff's prior assaultive behavior, his apparent skill and training, his extensive criminal

history, and his location in a small night club, he believed that there was a potential for violence by the plaintiff. Consequently, Davis assembled two other narcotics investigators as well as a uniformed officer to join him in contacting the plaintiff.

Upon arrival at the night club Davis attests that he asked plaintiff to step outside to talk and, when he reached toward plaintiff to escort him out of the nightclub, plaintiff began flailing his arms and striking out at him and other officers. At that point, Davis attests that he and the other officers attempted to gain control of the plaintiff to prevent him from assaulting them and to prevent plaintiff from producing a weapon. Based on these allegations it is clear that the officers were given probable cause for arrest by the plaintiff's actions. From the defendants' version of events, plaintiff attacked the officers before they had an opportunity to investigate the allegations or discuss the matter with him. Once the plaintiff began to violently assault them, the officers had probable cause to arrest him.

However, plaintiff disputes the defendants' version of events. Since this is defendants' motion for summary judgment, this Court must view the evidence in the light most favorable to the plaintiff as the non-moving party. The plaintiff alleges in his objections that he was approached by Officer Davis and asked if he possessed any illegal drugs. Plaintiff alleges that when he replied "no," Davis asked to search his person, to which the plaintiff again replied "no." Plaintiff alleges that, at this point, Davis called the other officers into the area, grabbed his handcuffs and told plaintiff to put his hands behind his back. Because probable cause is an objective test, we must examine the facts within the knowledge of the arresting officers to determine whether those facts provide a probability on which reasonable and prudent persons would act. *See Maryland v. Pringle*, 540 U.S. 369. Davis attested that he had previously arrested the plaintiff for the possession of drugs, that during the June 1, 2001, arrest plaintiff became violent towards the officers, and that he believed the plaintiff to be

10

a boxing teacher. Additionally, the officers had information from a credible informant that the plaintiff was in possession of drugs and had talked to him about the purchase of those drugs. At the time the officers approached plaintiff they were in a small nightclub with other, unknown individuals around. Considering the totality of the circumstances and facts within the knowledge of the arresting officers, this Court finds that they provide a probability upon which a reasonable and prudent person would believe that the plaintiff had committed or was committing a crime and, therefore, probable cause existed to arrest without a warrant.

**Right to Resist Arrest**

All claims of the use of excessive force during an investigatory stop or arrest or other seizure are governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The test for excessive force in an arrest context requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The standard for measuring the reasonableness of an arrest is wholly objective; subjective bad intentions do not make a constitutional violation out of an otherwise reasonable seizure. *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The focus is on the reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham*, 490 U.S. at 369-97; *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991) (officer's

violation of police procedures in approaching suspect was irrelevant to reasonableness of later decision to shoot in response to a perceived threat).

The affidavits of the defendants establish that the plaintiff became violent and began struggling with law enforcement officers when they attempted to escort him out of the club in an effort to talk with him. It is reasonable to conclude that the defendants would have believed that the plaintiff was dangerous and could have possibly attempted to retrieve a weapon based on his prior history and behavior. Additionally, it is reasonable to conclude that the plaintiff was putting the officers at danger by struggling and resisting arrest and also himself at risk by attempting to swallow cocaine in his possession to destroy evidence. The affidavits indicate that the plaintiff was warned that he would be sprayed with pepper spray if he continued to struggle and when he failed to do so, Officer Lochart sprayed him.

This Court must determine whether the defendants "acted reasonably as viewed from the officer's perspective of the situation." *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993). As evidenced by both the defendants' affidavits and the plaintiff's own pleadings, the plaintiff was struggling with the officer. Plaintiff refused to follow the instructions of the law enforcement officers and resisted their attempts to arrest him. The facts indicate that the force applied to take the plaintiff into custody was reasonable based on how tense the situation was, especially from an officer's perspective. Law enforcement is allowed to use reasonable force to take an individual into custody.

Plaintiff has failed to show that any of the officers were improperly motivated or that the degree of force used against him was unconstitutional or anything more than reasonable given the situation. Even assuming for the sake of argument that excessive force was used during the arrest, a plaintiff my not recover for *de minimis* injuries. *Hudson v. McMillian*, 112 S. Ct. 995 (1992). The

plaintiff has failed to provide any medical records to reveal that any injuries he incurred were anything other than *de minimis*.

**Denial of Bond by City Judge**

The plaintiff alleges that he was improperly denied bond because Davis "persuaded the judge to deny bond." This is a general allegation without any support. Consequently, this Court finds that plaintiff's claim as to denial of bond is unsupported by the evidence before it.

## Conclusion

After a review of the case law and record before it, the Court adopts the Report and Recommendation of the Magistrate Judge as modified by this order, incorporates it herein, and overrules plaintiff's objections. For the reasons stated therein and in this order, defendants' motions for summary judgment are **GRANTED**, and to the extent the complaint states any state common law claims, this Court declines jurisdiction over them and they are dismissed.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

May 31, 2005
Florence, SC